IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jason Jones,                          :

       Plaintiff,                  :

     v.                             :    Case No. 2:12-cv-0545

Chief Inspector                       :    JUDGE GREGORY L. FROST
Gary R. Croft,
                                      :    Magistrate Judge Kemp
       Defendant.                  :

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, Jason Jones, an inmate who was housed at Ross
Correctional Institution at the time relevant to this action,
filed this action against defendants Chief Inspector Gary R.
Croft and Institutional Inspector Whitten pursuant to 42 U.S.C.
§1983.  According to the complaint, both of these defendants
conspired and demonstrated deliberate indifference when informed
of the imminent danger of murder or brutal attack faced by Mr.
Jones.  Defendants have filed a motion for summary judgment,
which is now fully briefed.  For the reasons set forth below, the
Court recommends that the motion (#20) be granted.

I.  <u>Introduction</u>

This is one of three cases filed by Mr. Jones asserting
claims of deliberate indifference to his safety arising from an
alleged conspiracy between various prison officials and prison
inmates.  The allegations in this action involve Defendants'
actions and inactions relating to a Notification of Grievance
that Mr. Jones filed on June 13, 2011 claiming that he was in
substantial risk of serious physical harm (Compl. at ¶2).  Mr.
Jones accuses Defendant Croft of violating his need for safety by
failing to take action to ensure Mr. Jones's safety, delaying the
response to the Notification of Grievance, and ultimately denying
the grievance.  Mr. Jones accuses Defendant Whitten of refusing

to make blank grievance forms available to Mr. Jones and failing
to ensure Mr. Jones' safety after being made aware of the
substantial risk of serious physical harm to Mr. Jones.

## II.  Legal Standard

Summary judgment is not a substitute for a trial when facts
material to the Court's ultimate resolution of the case are in
dispute.  It may be rendered only when appropriate evidentiary
materials, as described in Fed. R. Civ. P. 56(c), demonstrate the
absence of a material factual dispute and the moving party is
entitled to judgment as a matter of law.  Poller v. Columbia
Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving
party bears the burden of demonstrating that no material facts
are in dispute, and the evidence submitted must be viewed in the
light most favorable to the nonmoving party.  Adickes v. S.H.
Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must
draw all reasonable inferences from that evidence in favor of the
nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654
(1962).

The nonmoving party does have the burden, however, after
completion of sufficient discovery, to submit evidence in support
of any material element of a claim or defense on which that party
would bear the burden of proof at trial, even if the moving party
has not submitted evidence to negate the existence of that
material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317
(1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of
course, since "a party seeking summary judgment ... bears the
initial responsibility of informing the district court of the
basis for its motion, and identifying those portions of [the
record] which it believes demonstrate the absence of a genuine
issue of material fact," Celotex, 477 U.S. at 323, the
responding party is only required to respond to those issues
clearly identified by the moving party as being subject to the
motion.  It is with these standards in mind that the instant
motion must be decided.

The facts which the Court must take as true for purposes of a summary ruling are those which have been properly supported. As Fed. R. Civ. P. 56(c) states, proper support for facts at this stage of the case can come from "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials...." One common feature of all these types of information is that they be properly authenticated or sworn to. As the Court of Appeals has said, "it would [be] improper for the district court to consider documents that were not admissible in evidence" when ruling on a summary judgment motion. <u>Alexander v. CareSource</u>, 576 F.3d 551, 561 (6th Cir. 2009).

### III. <u>Analysis</u>

Mr. Jones has brought claims relating to his conditions of confinement alleging that Defendants violated his constitutional rights. While Mr. Jones stated in his complaint that this action was brought pursuant to 42 U.S.C. §§ 1983, 1985(3), 1986, and 1987, both parties have referred exclusively to section 1983 in their briefing. There is no need to analyze claims pursuant to section 1987, because that section does not provide a private right of action. <u>Trapp v. Kimpel</u>, 3:13-CV-18, 2013 WL 4510570, *3 (S.D. Ohio Aug. 23, 2013) (quoting <u>Carpenter v. Ashby</u>, 351 Fed. Appx. 684, 687 (3rd Cir. 2009) as stating "[o]n its face, § 1987 does not authorize a private right of action."). Accordingly, this Court will address sections 1983, 1985(3) and 1986, but will begin its analysis with section 1983, which provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...." 42 U.S.C. § 1983.

-3-

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (internal quotations and citations omitted). A plaintiff seeking relief under § 1983 may bring a claim against a public official in the official's individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law ." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In contrast, an official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Mr. Jones did not specify in the complaint which type of claim he was bringing, and Defendants made arguments addressing both official-capacity and individual-capacity claims. The parties' arguments regarding each type of claim will be addressed below.

Regarding the types of damages at issue, Mr. Jones's prayer for relief requested monetary damages or, alternately, release from his sentence and conviction. However, "[h]abeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement." Skinner v. Switzer, 131 S. Ct. 1289, 1293 (2011). Accordingly, release from sentence and conviction is not a proper remedy for Mr. Jones's claims, and only his request for damages is before the Court.

A. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Grinter v. Knight, 532 F.3d 567, 572 (6th Cir. 2008) (quoting Will v. Mich. Dep't of State Police,

-4-

491 U.S. 58, 71 (1989)).  "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." <u>Hafer v. Melo</u>, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L. Ed. 2d 301 (1991) (citing inter alia Fed. R. Civ. Pro. 25(d)(1); Fed. R.App. Pro. 43(c)(1)).  As a result, an official capacity suit is, for most purposes, "'no different from a suit against the State.'" <u>McCoy v. Michigan</u>, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989)).

The Eleventh Amendment to the United States Constitution "bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." <u>Grinter</u>, 532 F.3d at 572 (citing <u>Will</u>, 491 U.S. at 66; additional citations omitted). This immunity extends to claims against individuals sued in their official capacity to the extent that those claims seek monetary damages. <u>Barker v. Goodrich</u>, 649 F.3d 428, 433 (6th Cir. 2011), <u>reh'g denied</u> (Sept. 12, 2011); <u>see also</u> <u>McCormick v. Miami Univ.</u>, 693 F.3d 654, 662 (6th Cir. 2012).  Ohio has not waived its sovereign immunity or consented to being sued in federal court. <u>See</u> <u>Mixon v. State of Ohio</u>, 193 F.3d 389, 397 (6th Cir. 1999); <u>see also</u> <u>Barker</u>, 649 F.3d at 432 ("The burden of establishing Eleventh Amendment immunity lies with the state, and the defense is waived if it is not raised.") (citations omitted). Furthermore, section 1983 has not abrogated that immunity, <u>see</u> <u>Campbell v. Hamilton Cnty.</u>, 23 F. App'x 318, 327 (6th Cir. 2001) (quoting <u>Quern v. Jordan</u>, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)), and Mr. Jones has not argued that 1985(3) or 1986 abrogated that immunity, nor does the language of those sections indicate an intent to abrogate Eleventh Amendment immunity.  42 U.S.C. §§ 1983, 1985(3), 1986.  Accordingly, because the claims

at issue here are claims for monetary damages, to the extent
Defendants are sued in their official capacities, the claims
against them are barred by the Eleventh Amendment.

Mr. Jones responds to that argument by making a variety of
arguments.  His first argument discusses "discretion" authority,
and while the question of whether government officials are
performing discretionary functions is relevant to whether
qualified immunity protects defendants sued in their <u>individual</u>
capacity, it is not relevant to the question of whether Eleventh
Amendment immunity protects defendants sued in their <u>official</u>
capacity.  Mr. Jones also suggests that municipal liability
exists here, but neither of the Defendants are municipalities, so
that argument is irrelevant.  Mr. Jones discusses absolute
immunity, but that is distinct from Eleventh Amendment immunity,
and not applicable here.  Absolute immunity applies to the
legislative immunity created by the Speech or Debate Clause, the
immunity of the President of the United States from damages
liability arising from official acts, and the provision of
judicial immunity for certain acts.  <u>Forrester v. White</u>, 484 U.S.
219, 229, 108 S. Ct. 538, 545, 98 L. Ed. 2d 555 (1988).  In
contrast, Eleventh Amendment immunity relates to the immunity of
states and state agencies from suits.  Mr. Jones has not sued
legislators, the President, or judges, so absolute immunity is
not applicable here.  Mr. Jones also argues that he has exhausted
his administrative remedies, and that his claims are not barred
by the statute of limitations.  Neither of those arguments are
relevant to whether Eleventh Amendment immunity bars claims
against Defendants in their official capacity.  Mr. Jones makes
additional arguments and assertions regarding jurisdiction and
monetary damages, but he does not provide any legal authority to
contradict the conclusion that Eleventh Amendment immunity
protects Defendants from being sued for monetary damages in their

official capacities.  To the extent that Mr. Jones has sued
Defendants in their official capacities, such claims are barred
by the Eleventh Amendment.

B.  <u>Individual Capacity Claims</u>

In opposition to any claims brought against Defendants in
their individual capacity, Defendants raised the defenses of
qualified immunity, failure to state a claim upon which relief
can be granted, and lack of sufficient personal involvement of
Defendants.

Public officials sued in their individual capacities may
raise "qualified immunity" as a defense to the suit. That defense
has been explained as follows:

> [G]overnment officials performing discretionary
> functions, generally are shielded from liability for
> civil damages insofar as their conduct does not violate
> clearly established constitutional or statutory rights
> of which a reasonable person would have known.

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73
L.Ed.2d 396 (1982) (citations omitted).  Conversely, when such
officials violate constitutional or statutory rights, "if the law
was clearly established, the immunity defense ordinarily should
fail, since a reasonably competent public official should know
the law governing his conduct." <u>Id</u>. at 818–19.  "Qualified
immunity balances two important interests—the need to hold public
officials accountable when they exercise power irresponsibly and
the need to shield officials from harassment, distraction, and
liability when they perform their duties reasonably." <u>Pearson v.
Callahan</u>, 555 U.S. 223, 231 (2009).

Whether qualified immunity applies involves "a two-step
inquiry, addressing (1) whether, considering the allegations in a
light most favorable to the injured party, a constitutional right
has been violated and (2) whether that right was clearly
established." <u>Yoder v. Univ. of Louisville</u>, 12-5354, 2013 WL

1976515, *6 (6th Cir. May 15, 2013) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) and <u>Campbell v. City of Springboro, Ohio</u>, 700 F.3d 779, 786 (6th Cir. 2012)). Those two steps need not be addressed in that order. <u>See</u> <u>Pearson</u>, 555 U.S. at 236–37.

Turning to the first step, Mr. Jones has sued Defendants pursuant to section 1983 for violations of his constitutional rights. His description of the constitutional violations follows:

> Chief Inspector Gary R. Croft and Institutional Inspector Whitten demonstrated Deliberate Indifference while conspiring under color of state law, also depriving Plaintiff of [procedural] Due Process rights . . . [by] failing to take corrective action to address risk faced by Plaintiff by failing to prevent staff from intimidating or physically harming Plaintiff. Thus violating Plaintiffs [sic] eighth Amendment Rights by failing to protect and Cruel and Unusual Punishment rights. . . .

(Compl. at ¶ 1.) While Mr. Jones has alleged the violation of both the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment's prohibition against cruel and unusual punishments, the claim under the Due Process Clause of the Fourteenth Amendment is redundant of the Eighth Amendment claim and need not be considered because "the Due Process Clause affords [prison inmates] no greater protection than does the Cruel and Unusual Punishment Clause." <u>Stewart v. Wilkinson</u>, No. 2:03-cv-0687, 2008 WL 2674843, *9 (S.D. Ohio July 7, 2008) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986) and citing <u>Lee v. Baker</u>, 181 F.3d 101 (table), 1999 WL 282652 at *1 (6th Cir. Apr. 30, 1999)). Accordingly, the question addressed in the first step is whether Mr. Jones can demonstrate that his Eighth Amendment right to be free from cruel and unusual punishment has been violated.

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may

-8-

not, for example, use excessive physical force against prisoners. . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations and internal quotations omitted).  In the context of an Eighth Amendment failure to protect claim, in order for a denial of a grievance to rise to the level of a constitutional violation, there must be allegations that the defendant had subjective knowledge of the threats and that the defendant acted unreasonably in disregarding the risk.  Williams v. McLemore, 247 Fed. Appx. 1 (6th Cir. June 19, 2007) (holding that plaintiff failed to state a claim against several defendants involved in the grievance process but did state a claim against one defendant involved in the grievance process).

A mere failure to respond to a grievance does not state a claim under § 1983 where that non-response did not cause or contribute to the constitutional violation.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under §1983." Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) (citations omitted); see also Argue v. Hofmeyer, 80 Fed. Appx. 427, 430 (6th Cir. 2003) (holding that the plaintiff failed to state a claim concerning the alleged interference with his ability to file grievances "because there is no inherent constitutional right to an effective prison grievance procedure").  Furthermore, "[f]ailing to follow proper procedures is insufficient to establish an infringement of a liberty interest," or a procedural due process claim.  Grinter v. Knight, 532 F.3d 567, 574-75 (6th Cir. 2008) (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983) & Sweeton v. Brown, 27 F.3d 1162, 1165 (6th Cir. 1994)).  An official's failure to act may rise to the level of a constitutional violation where that failure is an abandonment of "the specific duties of his position ... in the face of actual

-9-

knowledge of a breakdown in the proper workings of the department," that "result[s] directly in a violation of the plaintiff's" constitutional rights. <u>Hill v. Marshall</u>, 962 F.2d 1209, 1213 (6th Cir. 1992) (involving an official who repeatedly failed to review and respond to the medical needs of the prison population); <u>see also</u> <u>Williams v. McLemore</u>, 247 Fed. Appx. 1 (6th Cir. 2007) (following the denial of the plaintiff's grievance, the plaintiff was stabbed).   However, there is no liability where officials' only involvement was to deny administrative grievances and to fail to remedy the alleged behavior or intervene on the inmate's behalf.  <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999).

Here the claims at issue involve delay in response to and denial of a grievance.  In light of the fact that the delay in response and the denial of a grievance are not themselves constitutional violations even if the delays violated prison regulations, the question is whether those actions caused or contributed to a constitutional violation in such a way that the processing of the grievance was elevated to the level of a constitutional violation.

Mr. Jones has failed to demonstrate that any actions or inactions by Defendants in processing or failing to process the grievance caused any constitutional violation.  Defendants contend that "[Mr.] Jones has yet to come forward with any specifics as to any injuries he did incur that he can attribute to the operation of [the conspiracy alleged in his grievance]." (Doc. #20 at 18.)  In his objections to the motion for summary judgment, Mr. Jones wrote, "[a] review of Plaintiffs [sic] civil Complaint will annul all these allegations and a review of Plaintiff's Proper non-Falsified medical records will show that Plaintiff did receive a eternal [sic] injury to his right eye from Defendants [sic] actio[n]s and inactions."  (Doc. #27 at

14.)  However, Mr. Jones has not attached any medical records to
his opposition or identified where in the record such medical
records may be found.  The allegations in Mr. Jones' complaint
are not verified, and therefore the allegations that as a result
of Defendants' inactions, Mr. Jones suffered "daily mental and
emotional distress and serious inflicted physical injury as a
result of Plaintiffs [sic] imminent Danger," and received
"multiple cuts and serious eye injury" (compl. at ¶4.), are not
evidence.  Mr. Jones has not provided any other evidence of a
constitutional violation arising from Defendants's actions or
inactions.  In addition, even if properly supported evidence
demonstrated a constitutional violation of Mr. Jones' rights, he
has not provided any affidavits or other properly supported
evidence to demonstrate the cause of any such violations and to
connect them to the actions or inactions of Defendants.

Mr. Jones argues that "every Administrative rule that
Defendants break is essentially a violation of criminal law."
(Doc. #27 at 6.)  However, as discussed above, violations of
prison regulations are not in and of themselves constitutional
violations such that they would prevent qualified immunity from
protecting Defendants.  See, e.g., Grinter, 532 F.3d at 574-76
(citations omitted).

Mr. Jones makes a separate argument in his opposition that
he was only given the option of being given a disciplinary
violation and placed in "segregation 'Defined as [disciplinary]
confinement or local control,' or wait and gather more evidence .
. . Plaintiff state[d] that he did not violate any rules and
didnt [sic] deserve D.C."  (Doc. #27 at 7.)  He stated that
Defendant Whitten was the one who presented him with the option
of being placed in segregation.  (Doc. #27 at 13; Compl. at ¶3.)
Unlike his allegations in civil docket number 2:11-cv-871 that
alleged that he was placed in disciplinary confinement in order

to protect him because there was no lawful protective custody
facility (see case 2:11-cv-00871 at doc. # 16 at 2), here Mr.
Jones has alleged that he was offered disciplinary confinement
and declined it, and that Defendant Whitten "released Plaintiff
back to population." (Doc. #27 at 7.)  Being offered
disciplinary confinement and being permitted to decline it does
not rise to the level of a constitutional violation, and, as
discussed above, Defendants' failure to provide protective
custody for Mr. Jones in this case did not rise to the level of a
constitutional violation.

The discussion of the claims against Defendants in their
individual capacity has, to this point, focused on the claims
pursuant to section 1983.  However, qualified immunity would
apply equally to the claims brought pursuant to sections 1985(3)
and 1986, because no constitutional right has been violated here.
Furthermore, "[t]o prevail on a § 1985(3) claim, one must prove
(1) a conspiracy; (2) for the purpose of depriving, either
directly or indirectly, any person or class of persons of the
equal protection of the laws, or of equal privileges or
immunities of the laws; (3) an act in furtherance of the
conspiracy; (4) whereby a person is either injured in his person
or property or deprived of any right or privilege of a citizen of
the United States." Radvansky v. City of Olmsted Falls, 395 F.3d
291, 314 (6th Cir. 2005) (internal quotation marks omitted).  In
light of the absence of any evidence of a constitutional
violation, Mr. Jones cannot succeed on any claim that Defendants
conspired to violate his rights.  See Anderson v. County of
Hamilton, 780 F.Supp. 2d 635, 652 (S.D. Ohio 2011) (in order for
a conspiracy claim to succeed, "plaintiff must allege facts
showing not only an agreement by defendants to violate
plaintiff's constitutional rights, but also an actual deprivation
of a constitutional right").  Additionally, " '[w]here plaintiff

-12-

has stated no cause of action under § 1985, no cause of action exists under § 1986.'" Id. at 315 (quoting Braley v. City of Pontiac, 906 F.2d 220, 227 (6th Cir. 1990)).

In light of the fact that qualified immunity should shield Defendants here from liability for damages, there is no need to consider Defendants' other defenses.

### VII.  Recommendation

For these reasons, it is recommended that Defendants' Motion for Summary Judgment (Doc. 20) be granted and that this case be dismissed.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


                                    /s/ Terence P. Kemp

                            -13-

United States Magistrate Judge